UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KIM GRADY, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:14-CV-1738 JD ) |
| SISTERS OF THE HOLY CROSS, INC., | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This case arises under the Family and Medical Leave Act. The plaintiff, Kim Grady, went on FMLA leave for two weeks from her position as a beautician with the defendant, Sisters of the Holy Cross, Inc. Though Sisters later approved Ms. Grady's request for FMLA leave, it assessed her attendance points because it claimed she did not return from her leave on the date she said she would. Those attendance points later contributed to Ms. Grady's dismissal. Ms. Grady contends that she gave proper notice of her return date, and thus claims that Sisters interfered with her entitlement to FMLA leave by firing her based in part on that leave. Both parties have now moved for summary judgment in their favor on that claim. For the reasons that follow, the Court denies both parties' motions.

### I. FACTUAL BACKGROUND

Ms. Grady began working for Sisters in 1997, and was working full-time as a beautician during the time-period relevant to this action. On Monday, August 20, 2012, Ms. Grady left her shift early since she was not feeling well. Ms. Grady went to see her doctor, who diagnosed her with bipolar disorder and advised her to take time off of work while she became acclimated to her medications. Therefore, Ms. Grady called in sick each day for the remainder of the week. Pursuant to Sisters' attendance policy, an employee must report any absences at least one and a

half hours prior to the beginning of their shift. A properly reported absence results in 5 "attendance points," the accumulation of which can result in discipline up to and including termination. If an employee calls to report their absence less than one and a half hours before their shift, they are assessed 10 attendance points. And if an employee fails to call to report their absence within an hour after their shift was scheduled to begin, it is considered a "no call/no show," and the employee receives 15 attendance points. [DE 26-4]. Sisters also maintains an FMLA policy, which states that "when the need for medical leave is not known sufficiently in advance or medical conditions change unexpectedly, . . . the employee must give notice as soon as possible after the employee is aware that he or she needs to take FMLA leave." [DE 26-5 p. 3].

It is undisputed that Ms. Grady timely reported her absences during her first week of leave, thus complying with the notice aspects of Sisters' attendance policy. After Ms. Grady called off on Friday, August 24, 2012, for her fourth absence in a row, Kathy Decker-Burrous, Ms. Grady's supervisor, spoke to her. Ms. Decker-Burrous stated, "You've been gone, this is day four. Looks like it might be an F -- FMLA. You don't have to keep calling in." [DE 26-1 p. 11]. Ms. Decker-Burrous then spoke with Marty Sergeant, Sisters' payroll and benefits manager, who completed an FMLA notice for Ms. Grady. Ms. Sergeant mailed that form to Ms. Grady, along with a health care provider certification form for Ms. Grady's doctor to complete to confirm Ms. Grady's entitlement to FMLA leave.

The parties dispute what interactions took place between Ms. Grady and Sisters from that point until Ms. Grady's return on Wednesday, September 5, 2012. According to Ms. Decker-Burrous, she spoke to Ms. Grady on Friday, August 31, 2012, to inquire as to when Ms. Grady would be returning to work. During that conversation, Ms. Grady made clear she would be

returning the following business day, on Tuesday, September 4, 2012. Darlene Allen, the other beautician employed at Sisters, also stated that she spoke to Ms. Grady on August 31, 2012, and that Ms. Grady said she was returning to work on September 4, 2012. Ms. Allen confirmed that understanding with Ms. Decker-Burrous, too. Accordingly, Ms. Allen set a number of appointments for Ms. Grady for that day. Ms. Grady denies those accounts, though. She testified that she told Ms. Decker-Burrous during their initial conversation that she would be absent for a couple of weeks, but that she never told anyone that she would be returning specifically on September 4. Ms. Grady also denied speaking to Ms. Decker-Burrous between their conversation on August 24, 2012, and her return to work on September 5, 2012.

The parties agree, though, that Ms. Grady did not come to work on September 4, 2012, and that she did not call to report her absence on that date. Ms. Grady instead returned to work the following day, September 5, 2012. Her doctor also faxed the FMLA certification form to Sisters that afternoon, in which he indicated that Ms. Grady would need leave from August 21, 2012 to September 5, 2012. Thereafter, on September 6, 2012, Ms. Sergeant completed an FMLA Designation Notice, which stated that Ms. Grady's FMLA leave was approved, and that "[a]ll leave taken for this reason will be designated as FMLA leave." [DE 26-3 p. 16–19; DE 26-8]. However, Ms. Decker-Burrous decided to assess 10 attendance points for Ms. Grady's failure to report her absence on September 4. Ms. Decker-Burrous explained that because a no call/no show typically receives 15 attendance points and a properly reported absence receives 5 points, she assessed the difference between those two amounts so as to account only for the lack of notice, not the absence itself, which was excused.

Though those attendance points did not result in any immediate discipline, Ms. Grady subsequently accumulated additional points by arriving late on multiple occasions. When Ms.

Grady clocked in late on April 2, 2013, she reached the number of attendance points at which Sisters' attendance policy called for terminating her employment. Accordingly, Sisters fired Ms. Grady later that month, citing her accumulation of attendance points as the reason. [DE 26-7]. Sisters admits that Ms. Grady's firing was partially based on the 10 attendance points assessed for September 4, 2012. In response, Ms. Grady filed this action, in which she asserts a single count for FMLA interference, contending that her absence on September 4, 2012 was protected by the FMLA and that Sisters interfered with her entitlement to leave by assessing attendance points for that day. Discovery has now closed, and both parties have moved for summary judgment.

## II.  STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party

4

cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Finally, the fact that the parties have cross-filed for summary judgment does not change the standard of review; cross-motions are treated separately under the standards applicable to each. *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008).

### III. DISCUSSION

Ms. Grady presents a claim for interference under the FMLA. The FMLA offers various substantive entitlements, such as the right to take up to twelve weeks of leave in a one-year period, and the right to be reinstated to the same position upon returning from leave. *E.g.*, 29 U.S.C. §§ 2612(a)(1), 2614(a)(1). As a means of protecting those entitlements, the FMLA also prohibits employers from taking any action that would interfere with or restrain employees from invoking those entitlements. 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."). As applicable here, that means that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotion or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." 29 C.F.R. § 825.220(c). In order to make out a claim for FMLA interference, a plaintiff must establish five elements: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied or interfered with FMLA benefits to which she was entitled. *Preddie v. Bartholomew Consol. Sch. Corp.*, No. 14-3125, 2015 WL 5005203, at *8 (7th Cir. Aug. 24, 2015). An interference claim typically does not require a

plaintiff to establish a discriminatory or retaliatory intent, but only to prove that "the employer denied the employee his or her entitlements under the Act." *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443 (7th Cir. 2011).

Here, Ms. Grady argues that Sisters interfered with her rights under the FMLA by assessing attendance points for her absence on September 4, 2012. There is no dispute that Ms. Grady met the first three elements for an interference claim, as she was eligible for FMLA leave, Sisters is a covered employer, and Ms. Grady was entitled to leave under the FMLA. Further narrowing the scope of the inquiry, the parties also agree that Ms. Grady did not show up to work on September 4, 2012 and did not call in that day to report her absence; that Sisters assessed 10 attendance points for Ms. Grady being a "no call/no show" on that day; and that those 10 attendance points contributed to Sisters' termination of Ms. Grady's employment based on her accumulation of attendance points. Thus, the dispute boils down to whether Ms. Grady complied with the FMLA's requirements for providing notice of her return date and whether Sisters violated any of Ms. Grady's entitlements under the FMLA by assessing her attendance points for September 4. Since both parties have moved for summary judgment, and since each party's motion must be evaluated based on the facts viewed in the light most favorable to the opposing party, the Court analyzes the parties' respective motions in turn.

### A.    Ms. Grady's Motion for Summary Judgment

Ms. Grady argues that she provided adequate notice of her return date and that there is no genuine factual dispute as to whether Sisters violated her rights under the FMLA by assessing attendance points for September 4, 2012, so she asks for summary judgment in her favor. Viewing the facts in the light most favorable to Sisters, though, as the Court must do in evaluating Ms. Grady's motion, the facts show that Ms. Grady informed Sisters that she would return from her FMLA leave on September 4, 2012, but that she failed to call to report her

6

absence on that date. Specifically, Ms. Decker-Burrous testified in her deposition that she inquired with Ms. Grady on August 31, 2012 when she would be returning to work, and that Ms. Grady made clear that she was coming back on Tuesday, September 4, 2012, the day after Labor Day. [DE 26-1 p. 17; DE 29-4]. Ms. Grady did not actually return to work on September 4, though, and never notified Sisters of any change in her plans. Because the FMLA entitles an employer to reasonable notice of when the employee will return to work, and also allows an employer to enforce its usual and customary policies relative to reporting absences, those facts preclude summary judgment in Ms. Grady's favor. 29 C.F.R. § 825.311(c) ("It may be necessary for an employee to take more leave than originally anticipated. . . . [T]he employer may require that the employee provide the employer reasonable notice (i.e., within two business days) of the changed circumstances where foreseeable."); *Righi v. SMC Corp.*, 632 F.3d 404, 410 (7th Cir. 2011) ("[E]mployers are entitled to the sort of notice that will inform them not only that the FMLA may apply *but also when a given employee will return to work*." (internal quotation omitted, emphasis in original)); *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 689–91 (7th Cir. 2010); *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 972 (7th Cir. 2000) ("Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans.").

Ms. Grady advances a number of arguments to try to avoid that result, but none of them succeed. First, Ms. Grady argues that Sisters waived any notice requirement when Ms. Decker-Burrous told her on August 24, 2012, that she did not need to keep calling in each day. She also notes that the call-in policy does not apply when employees are on leave "for a specified period of time." [DE 26-1 p. 9]. If viewed in isolation, that argument might be persuasive, as an

7

"employer may waive employees' FMLA notice obligations or the employer's own internal rules on leave notice requirements." 29 C.F.R. § 825.304(e). However, the FMLA also permits employers to seek updates on when an employee expects to return from leave. 29 C.F.R. § 825.311(c); *Righi*, 632 F.3d at 410; *Gienapp*, 756 F.3d at 529–30 ("Employers may, for example, require updated estimates about how long leave will last."). And where the leave will be longer than anticipated, the employee must provide reasonable notice of that fact. 29 C.F.R. § 825.311(c); *Righi*, 623 F.3d at 411. Here, according to Sisters' evidence, Ms. Decker-Burrous spoke to Ms. Grady on August 31, 2012 to ask her when she would be returning from leave, and Ms. Grady provided a specific return date of September 4, 2012. Thus, even if Sisters had waived the requirement that Ms. Grady call in daily to report her absences, that would not necessarily show that Sisters waived its right to know when Ms. Grady would be returning to work or that Ms. Grady need not have notified it when the return date she provided changed.

Ms. Grady similarly argues that Sisters' attendance policy does not apply at all when an employee is on approved leave, so it was improper for Sisters to have disciplined her under that policy. This argument fails on the same disputed facts, though, since if Ms. Grady specifically told Sisters that she would be returning on September 4, and she failed to notify it of a change, then she could be found to have failed to provide adequate notice of her need for leave on that date as required by the FMLA. 29 C.F.R. §§ 825.303(a) (requiring notice of unforeseeable leave "as soon as practicable"), 825.311(c) (requiring "reasonable notice" of an extension of leave); *Righi*, 632 F.3d at 410. In that event, the FMLA would not immunize Ms. Grady against discipline, regardless of the applicability of any of Sisters' policies. *See Brown*, 622 F.3d at 690 (holding that the employee's failure to comply with the FMLA's notice requirement doomed her interference claim independently of whether she complied with her employer's leave policies).

8

Further, the attendance policy only states that when a request for FMLA leave is approved, "the *absences* are excused and cannot be considered to be part of an attendance performance problem." [DE 26-4 (emphasis added)]. That provision does not also excuse an employee from complying with any notice requirements. Those notice requirements are specified in the attendance policy and also in Sisters' FMLA leave policy, which requires employees to provide notice of unforeseeable leave "as soon as possible after the employee is aware that he or she needs to take FMLA leave." [DE 26-5]. Viewing the facts in the light most favorable to Sisters, Ms. Grady violated those requirements by telling it she would be at work on September 4 and then failing to notify it that she would be absent that day. Moreover, by Sisters' logic, it did not punish Ms. Grady for her absence, but only for the lack of notice. A properly reported sick day results in 5 attendance points under Sisters' policy, so Sisters deducted that amount (which is imposed purely for an absence) from the 15 points that would be typically imposed for being absent and failing to call, thus punishing Ms. Grady only for the lack of notice, not for her absence. [DE 26-1 p. 22–23]. Therefore, the Court could not find for the purposes of summary judgment that the discipline Sisters imposed violated its internal policies, either.

Ms. Grady further argues that even if she said she would be returning on September 4, the regulations allowed her up to two days to notify Sisters of her need for additional leave, and she provided that notice on September 5 when she returned to work. Under 29 C.F.R. § 825.311(c), if an employee needs to take more leave than originally anticipated, "the employer may require that the employee provide the employer reasonable notice (i.e., within two business days) of the changed circumstances where foreseeable." *See also* 29 C.F.R. § 825.303(a) ("When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable . . . . It generally should be practicable for the employee to

9

provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave."). Ms. Grady seems to argue that this allowed her to notify Sisters within two days after her absence on September 4 that she would need more leave. However, "the regulations are clear that notice of an unforeseeable need for leave—including an unforeseeable extension of medical leave—must be given within two working days of learning of the need for leave, not two working days of the expiration of leave." *Brown*, 622 F.3d at 690 (internal quotation omitted).[1] Ms. Grady does not provide any evidence that any circumstances changed on September 4 that extended her need for leave or that it was not practicable for her to notify Sisters prior to her absence on that date of her need for additional leave, so this argument fails, too.

In addition, Ms. Grady makes too much of the fact that after she failed to advise Sisters of her absence on September 4, Sisters nonetheless approved her FMLA leave through that date. Ms. Grady does not appear to dispute that if an employee fails to notify an employer of her absence as required by the FMLA, an employer can deny the FMLA leave. She argues, rather, that because Sisters later approved her FMLA leave anyway, it was then prohibited from holding her accountable for not calling in on that date. However, Ms. Grady has supplied no authority indicating that Sisters had such an all-or-nothing choice—that it could either deny her FMLA leave and impose the full 15 attendance points for an unexcused absence, or it could approve her FMLA leave and impose no discipline at all. In fact, if Ms. Grady did not provide adequate

---

[1] *Brown* analyzed the regulations in effect in 2007, which were revised in 2009, prior to the leave at issue here. 662 F.3d at 689 n.4. However, while the wording of the regulation has changed, the revisions do not affect the conclusion that the timeliness of the notice is determined relative to when the circumstances changed, not when the previous leave request expired. 29 C.F.R. §§ 825.311(c), 825.303 ("When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer *as soon as practicable* . . . .").

notice as required under the FMLA, then she has failed to make out a prima facie case of FMLA interference, and her claim fails regardless of how Sisters acted on her request after the fact. *See Brown*, 622 F.3d at 690; *see also Gilliam*, 233 F.3d at 971–72 (holding that even assuming the employee was on approved FMLA leave, "[n]othing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans," so the employer did not interfere with the employee's FMLA rights by firing him for a lack of notice of the duration of his leave).

Ms. Grady finally argues that by assessing her attendance points for not calling in on September 4, Sisters was modifying the Designation Notice it provided to her after her return, which indicated that her leave request was approved through at least September 4. Citing 29 C.F.R. § 825.300(d)(5), which requires employers to inform employees in writing if the information in the Designation Notice changes, Ms. Grady argues that Sisters at the very least interfered with her FMLA rights by failing to timely provide written notice of that change. *See* 29 C.F.R. § 825.300(e) (stating that failure to follow the notice requirements may constitute interference with an employee's FMLA rights). However, even granting Ms. Grady her premise that Sisters in effect modified the Designation Notice by assessing attendance points, a failure to provide notice as required under the FMLA regulations cannot give rise to relief unless the plaintiff can demonstrate prejudice, which Ms. Grady has not done. *Murray v. AT&T Mobility LLC*, 374 F. App'x 667, 671 (7th Cir. 2010). Sisters did not provide Ms. Grady with the Designation Notice until after she had returned from leave (when Sisters received the medical certification verifying that Ms. Grady qualified for FMLA leave), so she could not have relied upon the Designation Notice in thinking that her leave for September 4 had already been approved or that she need not report her absence on that date. Further, Ms. Grady was verbally

informed by Ms. Decker-Burrous on the day she returned to work that she would be assessed attendance points for failing to call in her absence on September 4, and she has not identified any way in which she was prejudiced by not immediately having that information in writing. Therefore, without producing undisputed evidence of prejudice, Ms. Grady cannot receive summary judgment in her favor on that basis, either. Accordingly, the Court denies Ms. Grady's motion for summary judgment.

**B.     Sisters' Motion for Summary Judgment**

Sisters likewise seeks summary judgment in its favor, but its motion ultimately fails based on the same disputed fact: whether Ms. Grady informed it that she intended to return to work on September 4. Viewing the facts in the light most favorable to Ms. Grady in this posture, Ms. Grady estimated to Ms. Decker-Burrous that she expected to be absent for two weeks; no one at Sisters sought to clarify or ascertain Ms. Grady's precise return date; Ms. Grady never told Ms. Decker-Burrous specifically that she would return to work on September 4; and Ms. Decker-Burrous told Ms. Grady that she did not need to call in her absences during her leave. Based on those facts, a reasonable jury could find that Ms. Grady had provided adequate notice of the length of her leave, that Sisters declined to require a more precise return date, and that Sisters waived its call-in policy during Ms. Grady's leave. If that was the case, then Ms. Grady fully complied with the FMLA's notice requirements and with Sisters' policies, and was entitled to take her leave without having any attendance points assessed for the leave period. 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotion or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies."); *Gienapp v. Harbor Crest*, 756 F.3d 527, 530 (7th Cir. 2014) (holding that an employee provided adequate notice and was entitled to proceed on an interference claim where the employee had to take unforeseeable FMLA leave, the employee

12

provided the employer an approximate length of the leave, and the employer did not seek a specific return date).

In arguing to the contrary, Sisters argues that regardless of whether Ms. Grady actually informed it that she would be returning on September 4, it honestly believed that Ms. Grady violated its attendance policy for failing to call in that day, and it thus did not violate Ms. Grady's FMLA rights, even if its enforcement of its policy was inaccurate. In support of that argument, Sisters relies entirely on *Perry v. Bath & Body Works, LLC*, 993 F. Supp. 2d 883, 911 (N.D. Ind. 2014), in which the court held that the employer did not interfere with the employee's FMLA right to reinstatement by firing her for performance reasons unrelated to her leave, since the employer honestly believed that her performance justified her discharge.[2] The evidence here, however, reveals a genuine dispute as to whether Sisters actually believed Ms. Grady violated its attendance policy. Most notably, Ms. Decker-Burrous testified that she personally informed Ms. Grady that she need not keep calling in each day to report her absences. [DE 26-1 p.11]. Moreover, Ms. Grady denies having told Ms. Decker-Burrous that she was returning on September 4, and maintains that she only provided an estimate of two weeks. Because those facts would have been in Ms. Decker-Burrous' personal knowledge, a jury could find that she did not honestly believe that Ms. Grady was going to be at work on September 4 or that Ms. Grady violated the attendance policy (that Ms. Decker-Burrous herself waived) by not calling in on that date.

---

[2] *Perry* is potentially distinguishable on the basis that the employer there imposed the discipline for performance reasons that were completely unrelated to the employee's leave, whereas the policy Sisters claims to have relied on relates to the notice Ms. Grady provided of her need for FMLA leave. Because a genuine dispute of fact precludes summary judgment on this theory anyway, the Court need not decide at this time whether Sisters could defeat Ms. Grady's claim if it honestly but mistakenly believed that Ms. Grady violated its attendance policy during her FMLA leave.

Sisters argues that Ms. Grady conceded during her deposition that Ms. Decker-Burrous honestly believed she violated the attendance policy, but Ms. Grady's testimony on that point was at best ambiguous. Sisters refers to the following exchange:

Q. Did Ms. Decker-Burrous tell you why she believed that you were going to work on September 4th?

A. She was under the impression that's when I was returning.

Q. And did she tell you why she was under that impression?

A. No.

[DE 29-3 p. 52]. Sisters argues that Ms. Grady admitted through this testimony that Ms. Decker-Burrous was honestly under the impression that Ms. Grady was going to be at work on September 4, in which case Ms. Grady would have violated the attendance policy by failing to report her absence. However, since the questions specifically referred to what Ms. Decker-Burrous told Ms. Grady, this testimony is ambiguous as to whether Ms. Grady was merely relaying what Ms. Decker-Burrous told her, or whether she was conceding that Ms. Decker-Burrous was actually under that impression. And given Ms. Grady's express testimony that she never told Ms. Decker-Burrous that she was returning on September 4, [DE 29-3 p. 39–41], the Court does not construe this testimony as a concession that Ms. Decker-Burrous actually believed Ms. Grady was returning on that date. Accordingly, there is a genuine dispute as to whether Ms. Decker-Burrous actually believed Ms. Grady violated the attendance policy, so summary judgment cannot be granted on that basis.

Sisters also notes that Ms. Grady did not appeal the 10 attendance points through an internal process, and that she did not dispute the other attendance points that cumulatively led to her discharge. However, Sisters fails to identify the legal significance of these facts. To the extent Sisters is attempting to impose an internal exhaustion requirement as a prerequisite to an

FMLA claim, it has failed to cite any authority in support of such a requirement, so it has waived any such argument. And while Sisters discusses the other attendance points Ms. Grady received, it expressly admits that the 10 points at issue here contributed to her firing, so it is not arguing that it would have taken the same action at that time regardless of this particular discipline. The Court accordingly rejects that argument as a basis for summary judgment in Sisters' favor too.

## IV. CONCLUSION

For the foregoing reasons, both parties' motions for summary judgment [DE 24, 27] are DENIED.

SO ORDERED.

ENTERED: October 15, 2015

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court